No. 24-1293

# In the United States Court of Appeals
## for the Fourth Circuit

MICHAEL MOSHOURES,

*Plaintiff-Appellant,*

v.

CITY OF NORTH MYRTLE BEACH; DANA CROWELL, in her official capacity as Chief
of the North Myrtle Beach Department of Public Safety,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
District of South Carolina
No. 4:22-cv-02123-JD
Hon. Joseph Dawson, III

## APPELLANT'S OPENING BRIEF

Meredith McPhail
Allen Chaney
ACLU OF SOUTH CAROLINA
P.O. Box 1668
Columbia, SC 29202
843-259-2925
mmcphail@aclusc.org
achaney@aclusc.org

*Counsel for Plaintiff-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Fourth Circuit Local Appellate Rule 26.1, Plaintiff-Appellant states that he is not a publicly held corporation, other publicly held entity, or trade association; does not issue shares to the public and has no parent companies, subsidiaries, or affiliates that have issued shares to the public in the United States or abroad; that no publicly held corporation or other publicly held entity has a direct financial interest in the outcome of the litigation; and that the case does not arise out of a bankruptcy proceeding.

# TABLE OF CONTENTS

Corporate Disclosure Statement ..................................................................................i

Table of Contents...................................................................................................... ii

Table of Authorities .................................................................................................. iii

Introduction ................................................................................................................1

Jurisdictional Statement .............................................................................................2

Statement of Issues.....................................................................................................2

Statement of the Case .................................................................................................2

Summary of Argument ...............................................................................................5

Standard of Review ....................................................................................................6

Argument.....................................................................................................................6

   I.   Vulgar speech, as defined by the Ordinance, is protected by the First
   Amendment. ...........................................................................................................6

     A. The Ordinance's definition of 'vulgar' is far broader than the Miller
     definition of 'obscenity' and restricts huge swaths of protected speech. ..........7

     B. In the context of Ordinance 21-33, 'vulgar' only restricts speech that is not
     obscene. .............................................................................................................9

   II.  The Ordinance's restriction on vulgar speech violates the First Amendment
   and must be enjoined...........................................................................................11

     A. The Ordinance's 'vulgar' provision is overbroad......................................11

     B. The Ordinance's limitation on vulgar speech is a content-based restriction
     that cannot survive strict scrutiny..................................................................12

Conclusion................................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656 (2004) ............................ 16, 17

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) .................................................. 7

*Boos v. Barry*, 485 U.S. 312 (1988) ........................................................................ 14

*Brown v. Entm't Merchants Ass'n*, 564 U.S. 786 (2011) .................................... 15, 16

*CASA de Maryland, Inc. v. Trump*, 971 F.3d 220 (4th Cir. 2020) .......................... 10

*Cent. Radio Co. Inc. v. City of Norfolk, Va.*, 811 F.3d 625 (4th Cir. 2016) ............. 13

*CFRE, LLC v. Greenville Cnty. Assessor*, 716 S.E.2d 877 (S.C. 2011) .................. 10

*Cohen v. California*, 403 U.S. 15 (1971)................................................................... 9

*Dahda v. U.S.*, 584 U.S. 440 (2018) ....................................................................... 10

*Denver Area Educ. Telecomms. Consortium v. F.C.C.*, 518 U.S. 727 (1996) ......... 17

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) .............................. 12, 15, 16

*F.C.C. v. Pacifica Found.*, 438 U.S. 726 (1978)...................................................... 14

*Fulton v. City of Phila., Penn.*, 593 U.S. 522 (2021) ....................................... 14, 15

*Harley v. Wilkinson*, 988 F.3d 766 (4th Cir. 2021) .................................................. 6

*Hartford Accident & Indem. Co. v. Lindsay*, 254 S.E.2d 301 (S.C. 1979).............. 10

*Hibbs v. Winn*, 542 U.S. 88 (2004)......................................................................... 10

*Hill v. Colorado*, 530 U.S. 703 (2000) ................................................................... 14

*Home Building & Loan Ass'n v. City of Spartanburg*, 194 S.E. 139 (1937)........... 10

*Lucero v. Early*, 873 F.3d 466 (4th Cir. 2017)....................................................... 13

*Luke Recs., Inc. v. Navarro*, 960 F.2d 134 (11th Cir. 1992) ................................. 8, 9

*McCullen v. Coakley*, 573 U.S. 464 (2014)............................................................. 18

*Miller v. California*, 413 U.S. 15 (1973) ...................................................7

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ....................................14

*People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815 (4th Cir. 2023) ...............................17

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ...................................12, 13

*Reno v. Am. Civil Liberties Union*, 521 U.S. 844 (1977) ..................................15, 16

*Reynolds v. Middleton*, 779 F.3d 222 (4th Cir. 2015) .............................................11

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 (1988) ......................18

*Roth v. United States*, 354 U.S. 476 (1957) ...............................................8

*Sable Comm. of Cal., Inc. v. F.C.C.*, 492 U.S. 115 (1989) .................................8, 16

*Senate by & through Leatherman v. McMaster*, 821 S.E.2d 908 (S.C. 2018) ........10

*Sharpe v. Winterville Police Dep't.*, 59 F.4th 674 (4th Cir. 2023) ..........................11

*Smith v. Tiffany*, 799 S.E.2d 479 (S.C. 2017) ...........................................7

*Snyder v. Phelps*, 562 U.S. 443 (2011) ..................................................14

*Sovereign News Co. v. Falke*, 448 F. Supp. 306 (N.D. Ohio 1977).........................8

*Steinburg v. Chesterfield Cnty., Plan. Comm'n*, 527 F.3d 377 (4th Cir. 2008) .......17

*Street v. New York*, 394 U.S. 576 (1969) .................................................14

*Texas v. Johnson*, 491 U.S. 397 (1989) ....................................................1

*United States v. Playboy Entm't Grp.*, 529 U.S. 803 (2000) .............................16, 17

*United States v. Stevens*, 559 U.S. 460 (2010) ....................................6, 11

*United States v. Wroblewski*, 781 F. App'x 158 (4th Cir. 2019)...............................8

*Virginia v. Hicks*, 539 U.S. 113 (2003) ..................................................11

*White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179 (4th Cir. 2022)................................................................................................6

*Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267 (1986) ...........................................16

**Statutes**

28 U.S.C. § 1291 .......................................................................................................2

28 U.S.C. § 1331 .......................................................................................................2

**Other Authorities**

Billy Johnson, Jr., *7 Ways the World Went Crazy With 'As Nasty As They Wanna Be,'* ROLLING STONE (Feb. 7, 2014), available at https://tinyurl.com/3uvy2jxf. ...9

Dawn R. Hobbs & Gordon G. Gallup, *Songs as a Medium for Embedded Reproductive Messages*, 9 EVOLUTIONARY PSYCH. 390 (July 2011).....................9

Dino Grandoni, *92% of Top Ten Billboard Songs Are About Sex*, THE ATLANTIC (Sept. 30, 2011), available at https://tinyurl.com/55fxk37k .................................8

**Rules**

Fed. R. Civ. P. 56 .....................................................................................................6

# INTRODUCTION

In 2021, the City of North Myrtle Beach enacted harsher volume limits on "words and lyrics" that it deemed profane, vulgar, or obscene. By doing so, the City violated a "bedrock principle underlying the First Amendment"—"that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

Below, the district court properly enjoined the Ordinance's regulation of profane speech but reversibly erred by denying Plaintiff's motion for summary judgment as to vulgar speech. Specifically, the court wrongly held that "Plaintiff is not entitled to First Amendment protection for 'vulgar' speech'" because "[t]he definition of 'vulgar' *falls within* the Ordinance's definition of obscene . . . as defined by Ordinance 21-33." JA134–135. But under South Carolina's rules of statutory interpretation, the Ordinance's definition of 'vulgar' reaches protected speech, and *only* protected speech. To start, the textual definition of 'vulgar'— which includes any "explicit and offensive reference to sex"—reaches far more speech than does the narrow definition of 'obscene.' Music, for example, is often vulgar, but because of its inherent artistic value, it is *never* obscene. Moreover, because 'vulgar' and 'obscene' are separately defined by the Ordinance, the district court was required to construe them as covering *different* speech.

Because the Ordinance's definition of 'vulgar' *only* captures protected speech, the law is facially unconstitutional. As the district court properly held in its analysis of profane speech, the City's content-based restrictions on vulgar words or

1

lyrics cannot satisfy strict scrutiny and necessarily prohibit a substantial amount of protected speech. Under clear First Amendment precedent, Defendants cannot impose criminal penalties for broadcasting vulgar words and lyrics at a volume louder than a whisper.

Refusing to enjoin the vulgarity portion of the Ordinance was reversible error and exposes Plaintiff, residents, and visitors to North Myrtle Beach to appreciable First Amendment chill. On appeal, Plaintiff asks this Court to reverse the district court and to permanently enjoin enforcement of Ordinance 21-33 against vulgar words and lyrics.

## JURISDICTIONAL STATEMENT

Because the district court's order was a final judgment regarding Plaintiff's claims that Defendants violated the United States Constitution, this Court has jurisdiction. 28 U.S.C. §§ 1291, 1331.

## STATEMENT OF ISSUES

Did the district court err by denying Plaintiff's Motion for Summary Judgment as to "vulgar" speech on grounds that 'vulgar' and 'obscene'—two separately defined statutory terms—mean the same thing and are not protected by the First Amendment?

## STATEMENT OF THE CASE

In response to resident complaints about music with "obscene and vulgar lyrics," the City of North Myrtle Beach passed Ordinance 21-33, which imposed stricter volume limits on noise that is "profane," "vulgar," or "obscene." JA22–23.

The Ordinance criminalizes profane, vulgar, and obscene speech that is louder than thirty decibels (the volume of a soft whisper) during the daytime or louder than fifty decibels (quieter than an air conditioner) at night. JA26. By contrast, all other noises may reach eighty decibels during the daytime and sixty decibels at night.[1] JA26.

Ordinance 21-33 defines 'obscene,' 'profane,' and 'vulgar' as follows:

OBSCENE means description of sexual conduct that is objectionable or offensive to accepted standards of decency which the average person, applying North Myrtle Beach community standards would find, taken as a whole, appeals to prurient interests or material which depicts or describes, in a patently offensive way, sexual conduct or genitalia specifically defined by S.C. Code Ann. §16-15-305, which, taken as a whole, lacks serious literary, artistic, political, or scientific value.

PROFANE means to treat with irreverence or contempt, crude, filthy, dirty, smutty, or indecent.

VULGAR means making explicit and offensive reference to sex, male genitalia, female genitalia or bodily functions.

JA25. Violations of the Ordinance are punishable by a fine of up to five hundred dollars and up to thirty days in jail. JA10, JA27.

Plaintiff Michael Moshoures, owner of a local bar, sued the City of North Myrtle Beach and two city officials, alleging that Ordinance 21-33 was overbroad and impermissibly content-based under the First Amendment and was unconstitutionally vague under the Fourteenth Amendment. The Parties agreed that

---

[1] Because decibels, the unit used to measure sound, are a logarithmic measure, eighty decibels is thirty-two times louder than thirty decibels. JA9.

no factual dispute existed, and both moved for summary judgment. In ruling on the Parties' motions, the district court treated each part of Ordinance 21-33—limitations on profane speech, vulgar speech, and obscene speech—as severable. JA133. For Plaintiff's First Amendment claims, the court began by asking whether each defined category of speech was protected by the First Amendment and then, if so, proceeded to determine whether the Ordinance was an unconstitutional content-based restriction or was overbroad. JA133–136.

As to **profane speech**, the district court granted Plaintiff's Motion for Summary Judgment and permanently enjoined the Ordinance. The court first concluded that profane speech is protected by the First Amendment. Then, the court "agree[d]" that "Defendants offered no compelling interest to justify the Ordinance, and even assuming the proffered interest is compelling, the Ordinance is not narrowly tailored to serve that interest." JA138. The court also agreed with Appellant that Ordinance 21-33's limitation on profane speech was overbroad under the First Amendment and unconstitutionally vague under the Due Process Clause. JA137–138, JA143.

As to **obscene speech**, the district court denied Plaintiff's Motion for Summary Judgment and granted Defendant's Motion for Summary Judgment. JA144. The court held that because the Ordinance's definition of 'obscenity' "mirrors the Supreme Court's definition of obscene material" and "refers to South Carolina's statute defining obscenity," speech covered by that definition does not receive First Amendment protection. JA134.

Finally, as to **vulgar speech**, the court denied Plaintiff's Motion for Summary Judgment and granted Defendant's Motion for Summary Judgment. Although the Ordinance separately defines obscene and vulgar speech, the district court ruled that vulgar speech is a narrower subset of obscene speech. Specifically, the district court held that because "[t]he definition of 'vulgar' *falls within* the Ordinance's definition of obscene . . . Plaintiff is not entitled to First Amendment protection for vulgar speech as defined by Ordinance 21-33." JA135 (emphasis added).

On appeal, Plaintiff only challenges the district court's refusal to enjoin the Ordinance's restrictions on vulgar speech.

## SUMMARY OF ARGUMENT

Vulgar speech, as defined in Ordinance 21-33, is protected by the First Amendment. The district court's decision to the contrary violates well-established principles of statutory construction and constitutional law. First, because Ordinance 21-33 used—and defined—the terms 'vulgar' and 'obscene' separately, 'vulgar' must mean something different than 'obscene.' Second, because vulgar speech falls outside the narrow category of obscenity, it receives First Amendment protection.

And because vulgar speech is protected under the First Amendment, the district court should have reached the substance of Plaintiff's First Amendment challenges to the Ordinance's vulgarity provision. Had the court done so, it would have concluded—as it did for the profanity provision, which Defendants do not contest—that the vulgarity provision is an unconstitutional content-based

restriction because it was not justified by or narrowly tailored to a compelling interest. Likewise, the district court would have concluded that the vulgarity provision is unconstitutionally overbroad.

## STANDARD OF REVIEW

A grant or denial of summary judgment is reviewed de novo. *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 189 n.2 (4th Cir. 2022). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Harley v. Wilkinson*, 988 F.3d 766, 768 (4th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)).

## ARGUMENT

### I. Vulgar speech, as defined by the Ordinance, is protected by the First Amendment.

Vulgar speech, as defined by Ordinance 21-33, is protected by the First Amendment unless it falls squarely within one of five narrowly drawn exceptions: obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *United States v. Stevens*, 559 U.S. 460, 468, 470–72 (2010). The Supreme Court has closely patrolled the boundaries of these categories, rejecting any "freewheeling authority to declare new categories of speech outside the scope of the First Amendment." *Id.* at 471–72.

Whether the Ordinance's definition of 'vulgar' falls within one of the Supreme Court's narrow exceptions to the First Amendment—here, obscenity— presents a question of statutory interpretation. In South Carolina, "[i]t is axiomatic

that statutory interpretation begins (and often ends) with the text of the statute in question." *Smith v. Tiffany*, 799 S.E.2d 479, 483 (S.C. 2017).

A. <u>The Ordinance's definition of 'vulgar' is far broader than the *Miller* definition of 'obscenity' and restricts huge swaths of protected speech.</u>

The First Amendment does not protect obscene speech. *Miller v. California*, 413 U.S. 15 (1973). That said, speech is only obscene under the First Amendment if (1) an average person, "applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest;" (2) the work "depicts or describes, in a patently offensive way, sexual conduct that is specifically defined by the applicable state law;" and (3) the work, taken as a whole, "lacks serious literary, artistic, political, or scientific value." *Id.* at 24. The Supreme Court has long recognized that "constitutionally protected expression . . . is often separated from obscenity only by a dim and uncertain line." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66 (1963). As a result, regulations on obscenity must be "carefully limited," *Miller*, 413 U.S. at 23–24, and must "scrupulously embody the most rigorous procedural safeguards," *Bantam Books, Inc.*, 372 U.S. at 66.

Under the Ordinance, "VULGAR means making explicit and offensive reference to sex, male genitalia, female genitalia or bodily functions." JA25. That definition of 'vulgar' plainly reaches speech and expression that is not constitutionally obscene and thus is protected by the First Amendment.

Although obscene speech includes sexual references, most sexual references (even "explicit and offensive" references) are not obscene. As the Supreme Court

has repeatedly explained, "sex and obscenity are not synonymous." *Roth v. United States*, 354 U.S. 476, 487 (1957). To the contrary, "[t]he portrayal of sex, *e.g.*, in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press." *Id.*; *see also Sable Comm. of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989) ("Sexual expression which is indecent but not obscene is protected by the First Amendment."); *Sovereign News Co. v. Falke*, 448 F. Supp. 306, 392 (N.D. Ohio 1977) ("The high degree of protection afforded all forms of pure expression does not, with a narrow exception, end when the subject matter of the expression deals with human sexuality.") (citing *Roth*, 354 U.S. at 485). Indeed, as this Court observed in *United States v. Wroblewski*, 781 F. App'x 158, 162 (4th Cir. 2019), "depictions of sex . . . are extremely common in art, television, and movies," which—because of their artistic value—are not obscene under *Miller* and are protected by the First Amendment.

More relevant here, "explicit and offensive reference[s] to sex" are especially commonplace in music. *See Luke Recs., Inc. v. Navarro*, 960 F.2d 134, 135 (11th Cir. 1992) (holding that 2 Live Crew's "As Nasty As They Wanna Be" is protected by the First Amendment). Indeed, an overwhelming number of popular songs contain sexual themes like "sex appeal" and "arousal." *See* Dino Grandoni, *92% of Top Ten Billboard Songs Are About Sex*, THE ATLANTIC (Sept. 30, 2011), available at https://tinyurl.com/55fxk37k. For example, a psychology professor at SUNY Albany calculated that 92% of the 174 songs that appeared on the Billboard Top 10 in 2009 contained sexual messages. *See* Dawn R. Hobbs & Gordon G. Gallup, *Songs as a Medium for Embedded Reproductive Messages*, 9

EVOLUTIONARY PSYCH. 390, 397 (July 2011) (observing that 2009's Billboard Top 10 list averaged 10.49 sex-related phrases per song). Many of these songs would trigger criminal penalties under the Ordinance's definition of 'vulgar.' Yet even the raunchiest of music falls outside the narrow category of 'obscene.' *Navarro*, 960 F.2d at 135 ("[B]ecause music possesses inherent artistic value, no work of music alone may be declared obscene.").[2] As Justice Harlan famously quipped in *Cohen v. California*, 403 U.S. 15, 25 (1971), "one man's vulgarity is another's lyric."

Judged against the Supreme Court's narrow definition of obscenity, we see that the Ordinance's definition of 'vulgar' sweeps far more broadly. This is especially true given that the purpose of the Ordinance is to suppress offensive music, JA90–93, which has inherent artistic value, *see Navarro*, 960 F.2d at 135. Because 'vulgar' is far more expansive than the Supreme Court's definition of obscenity, the Ordinance's regulation of vulgar speech implicates the First Amendment.

B. In the context of Ordinance 21-33, 'vulgar' only restricts speech that is *not* obscene.

Moreover, as two separately defined statutory terms, 'vulgar' and 'obscene' must be given *independent* meaning within the context of Ordinance 21-33. If 'vulgar' is subsumed by the definition of 'obscene,' then 'vulgar' is surplusage.

---

[2] The content of 2 Live Crew's album at issue in *Navarro* is extremely sexually explicit. *See* Billy Johnson, Jr., *7 Ways the World Went Crazy With 'As Nasty As They Wanna Be,'* ROLLING STONE (Feb. 7, 2014), available at https://tinyurl.com/3uvy2jxf.

Likewise, if 'obscene' is contained within the definition of 'vulgar,' then 'obscene' is surplusage. Under South Carolina law (and basic logic), neither can be true.

"[W]henever possible, [courts] should give independent statutory terms independent meaning." *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 242–43 (4th Cir. 2020) (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). In South Carolina, assigning independent meaning to statutory terms ensures that statutes are interpreted "as a whole," *Senate by & through Leatherman v. McMaster*, 821 S.E.2d 908, 911 (S.C. 2018), such that "no word . . . [is] rendered surplusage, or superfluous," *CFRE, LLC v. Greenville Cnty. Assessor*, 716 S.E.2d 877, 881 (S.C. 2011) (citation omitted); *see also Dahda v. U.S.*, 584 U.S. 440, 448–49 (2018). Ensuring each term is construed in accordance with the rest of the statute is a primary consideration, and one that must be honored even in the absence of textual ambiguity. *See Hartford Accident & Indem. Co. v. Lindsay*, 254 S.E.2d 301, 304 (S.C. 1979) ("Full effect must be given to each section of a statute, giving words their plain meaning, and, *in the absence of ambiguity*, words must not be added or taken away.") (emphasis added); *Home Building & Loan Ass'n v. City of Spartanburg*, 194 S.E. 139, 142 (1937) ("Full effect must be given to each section, and the words must be given their plain meaning. *Where there is no ambiguity*, words must not be added to or taken from the statute.") (emphasis added).

Below, the district court refused to enjoin the Ordinance's restrictions on vulgar speech based on its conclusion that "the definition of 'vulgar' falls within the Ordinance's definition of 'obscene.'" JA135. But even setting aside the textual gulf between 'vulgar' and 'obscene,' the South Carolina rules of statutory

interpretation do not permit the term 'vulgar' to be read out of the Ordinance. By specifically targeting vulgar words and lyrics *and* obscene words and lyrics, the statute intentionally and unambiguously targets a category of speech that is definitionally protected by the First Amendment.

II.   **The Ordinance's restriction on vulgar speech violates the First Amendment and must be enjoined.**

Because the Ordinance's suppression of vulgar speech implicates the First Amendment, *see supra* Part I, "[t]he burden then shifts to the [Defendants] to prove the speech restriction is constitutionally permissible," *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 680 (4th Cir. 2023) (citing *Reynolds v. Middleton*, 779 F.3d 222, 226 (4th Cir. 2015)). As the district court held regarding the City's suppression of profane speech, the City's suppression of vulgar speech is overbroad and fails scrutiny.

A.   The Ordinance's 'vulgar' provision is overbroad.

A law is unconstitutionally overbroad "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Stevens*, 559 U.S. at 473 (internal quotation marks omitted). Although the overbreadth doctrine is "strong medicine," the Supreme Court has approved facial invalidation where "the threat of enforcement . . . may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

As to the Ordinance's profanity provision, the district court "agree[d]" that "because the 'profane' provision of Ordinance 21-33 regulates *only* protected

speech and no unprotected speech . . . it is unconstitutionally overbroad." JA136.
In that respect, the vulgarity provision is identical. Because 'vulgar' means
something different than 'obscene,' it necessarily receives First Amendment
protection. *See supra* Part I. Therefore—like the profanity provision—the vulgarity
provision "regulates *only* protected speech" and, as a result, is unconstitutionally
overbroad.

    B.    <u>The Ordinance's limitation on vulgar speech is a content-based restriction that cannot survive strict scrutiny.</u>

    "[W]hen the government, acting as censor, undertakes selectively to shield
the public from some kinds of speech on the ground that they are more offensive
than others, the First Amendment strictly limits its power." *Erznoznik v. City of
Jacksonville*, 422 U.S. 205, 209 (1975). Content-based restrictions are
"presumptively unconstitutional and may be justified only if the government
proves that they are narrowly tailored to serve compelling state interests." *Reed v.
Town of Gilbert*, 576 U.S. 155, 163 (2015).

    The district court held—and Defendants do not contest—that the
Ordinance's restriction on profane speech is content-based; was not supported by a
compelling interest; and was not narrowly tailored to the interest cited. Defendants
offer the same interest and allege the same narrow tailoring in support of the
vulgarity provision. *See* JA101–105. So, for those same reasons, the Ordinance's
limitation on vulgar speech is also an unconstitutional content-based restriction.

### 1. The Ordinance's vulgar speech provision is content-based.

"Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163; *see also Lucero v. Early*, 873 F.3d 466, 470 (4th Cir. 2017) (A law that "on its face draws distinctions based on the message a speaker conveys" is content-based "regardless of the government's justification or purpose in enacting it.") (citation and internal quotation marks omitted); *Cent. Radio Co. Inc. v. City of Norfolk, Va.*, 811 F.3d 625, 632–33 (4th Cir. 2016).

As the district court noted, "[d]etermining whether any given language is restricted by Ordinance 21-33's definition of 'profane' 'depends entirely on the communicative content' of that language." JA138 (quoting *Reed*, 576 U.S. at 164). The Ordinance's vulgarity provision is the same: whether speech is vulgar turns entirely on the communicative content of that language. Defendants conceded as much in their summary judgment briefing. JA98 ("As a matter of law, *that the ordinance makes a distinction on the basis of content*—that is, obscene, vulgar, and/or profane lyrics versus non-obscene, vulgar, and/or profane lyrics—does not mean that the *justification* for the ordinance is content-based.") (first emphasis added).

### 2. As the district court held, the City cited no compelling interest.

A content-based restriction such as Ordinance 21-33 can only survive scrutiny if it is justified by a compelling government interest—an interest "of the highest order" that must be stated "precise[ly]" and not "at a high level of

generality." *Fulton v. City of Phila., Penn.*, 593 U.S. 522, 541 (2021) (citations omitted).

As the district court noted, although "North Myrtle Beach cites various governmental interests in Ordinance 21-33, the only interest that might justify the content-based differential treatment is its interest in "protect[ing] children from being exposed to broadcast [] profane [] words and lyrics while accompanying their caretakers on the streets, in public places, in homes or in businesses."[3] JA139. But "only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to [minors]," and "[s]peech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a

---

[3] Defendants also claimed an interest in "protect[ing] captive audiences [and] unwilling listeners . . . from being exposed to obscene, vulgar, or profane lyrics . . . while they go about normal, everyday pursuits on public streets." JA102. But an audience is only "captive" when "the degree of captivity makes it impractical for the unwilling viewer . . . to avoid exposure," *Hill v. Colorado*, 530 U.S. 703, 718 (2000); *see also Snyder v. Phelps*, 562 U.S. 443, 459 (2011), and shielding listeners from unwanted speech is not a compelling interest, *Boos v. Barry*, 485 U.S. 312, 322 (1988); *see also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982) ("Speech does not lose its protected character . . . simply because it may embarrass others or coerce them into action."); *F.C.C. v. Pacifica Found.*, 438 U.S. 726, 745–46 (1978) ("[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection."); *Street v. New York*, 394 U.S. 576, 592 (1969) ("It is firmly settled that . . . the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.").

Additionally, Defendants claimed an interest in "preserving the character of its neighborhoods." JA98. Though that may be a government interest, Defendants cited no authority that it is a *compelling* one. *See* JA139.

legislative body thinks unsuitable for them." *Erzoznick*, 422 U.S. at 213–14. Rather, "[i]n most circumstances, the values protected by the First Amendment are no less applicable when government seeks to control the flow of information to minors." *Id*.

This is not one of those "narrow and well-defined circumstances." First, the City's general interest in "protecting" children from vulgarity while "on the streets, in public places, in homes or in businesses" does not approach the level of specificity required by the First Amendment. *Fulton*, 593 U.S. at 541. The Ordinance's vulgarity provision encompasses a wide range of protected expression, *see supra* Part I, and neither the City nor the Ordinance itself gives any reason why the protection of children from such a broad category of speech serves any government interest, much less a compelling one, JA141 (citing *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799–800 (2011)).

Second, the City aims to intervene while children are "accompan[ied by] their caretakers"—*i.e.*, when children are already supervised by a decisionmaker competent to make parental choices regarding whether to shield their child from the wide array of language prohibited by Ordinance 21-33. JA93. But precedent emphasizes the government's interest in *supplementing*—not *supplanting*— parental authority. *See, e.g.*, *Brown*, 564 U.S. at 802–04 ("[W]e note our doubts that punishing third parties for conveying protected speech to children *just in case* their parents disapprove of that speech is a proper governmental means of aiding parental authority."); *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 865, 878 (1977). Ordinance 21-33 diverges from that principle.

3. **As the district court held, even if the City's interest were compelling, the Ordinance was not narrowly tailored to serve that interest.**

"[T]he Government may serve [a compelling] interest, but to withstand constitutional scrutiny, it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Sable*, 492 U.S. at 126 (internal quotation marks and citations omitted). A measure is "narrowly tailored" if no "lawful alternative and less restrictive means could have been used" to achieve the governmental interest. *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280 n.6 (1986). The measure "must 'fit' with greater precision than any alternative means," *id.*, and "must be pursued by means that are neither seriously underinclusive nor seriously overinclusive," *Brown v.*, 564 U.S. at 805.

"Even where," as here, "the protection of children is the object, the constitutional limits on governmental action apply." *Id.* at 804–05. Notably, on several occasions, the Supreme Court has rejected attempts to protect children from exposure to sexual content as violative of the First Amendment. *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 827 (2000); *Reno*, 521 U.S. at 882; *Sable*, 492 U.S. at 126; *Erznoznik*, 422 U.S. at 212; *see also Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 659–61 (2004) (upholding a preliminary injunction). In short, even when faced with the need to protect society's children, "the Government may not reduce the adult population to only what is fit for children." *Reno*, 521 U.S. at 875 (quoting *Denver Area Educ. Telecomms.*

*Consortium v. F.C.C.*, 518 U.S. 727, 759 (1996)) (internal quotation marks and alterations omitted).

Here, as the district court correctly held, Ordinance 21-33's expansive sweep is not narrowly tailored to the City's cited interest. JA140–142. The Ordinance targets "public thoroughfares"—where "speakers' rights are at their apex," *Steinburg v. Chesterfield Cnty., Plan. Comm'n*, 527 F.3d 377, 384 (4th Cir. 2008), and restricts "language which may be heard by adults, regardless of whether they object or consent," JA141 (discussing profanity). Defendants also failed to meet the "nonnegotiable requirement" that "actual evidence in the legislative record [demonstrates] that lesser restrictions will not do." *People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc*., 60 F.4th 815, 832 (4th Cir. 2023) ("Before a State may pass such expansive speech restrictions, this Circuit's precedent requires it to produce evidence demonstrating that it seriously undertook to utilize existing laws or attempted to use less intrusive tools readily available to it to achieve the proffered aims."). Defendants also failed to rebut Plaintiff's less restrictive alternative: deference to parental decision-making. JA141–142; *see also Ashcroft*, 542 U.S. at 669 ("The need for parental cooperation," or the fact that the alternative is not mandatory, "does not automatically disqualify a proposed less restrictive alternative."); *Playboy Entm't Grp.*, 529 U.S. at 824 ("It is no response that [the proposed less restrictive alternative] requires a consumer to take action, or may be inconvenient, or may not go perfectly every time. A court should not assume a plausible, less restrictive

alternative would be ineffective; and a court should not presume parents, given full information, will fail to act.").

Narrow tailoring demands "a close fit between ends and means." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). The means of Ordinance 21-33 (restricting a large swath of protected speech in public places) is not a "close fit" to the City's ends (protecting children from vulgarity in public places when accompanied by caretakers). Instead, the City "sacrifice[d] speech for efficiency," something the Supreme Court has "reaffirm[ed] simply and emphatically that the First Amendment does not permit[.]" *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988).

## CONCLUSION

The district court reversibly erred by conflating two separately defined statutory terms and ruling that vulgar speech is not protected by the First Amendment. This Court should reverse the district court's denial of Plaintiff's motion for summary judgment and permanently enjoin the City's overbroad and content-based restriction on vulgar speech.

Respectfully submitted,

May 20, 2024

/s/ *Meredith McPhail*

Meredith McPhail, Fed. ID #13500
Allen Chaney, Fed. ID #13181
ACLU OF SOUTH CAROLINA
Post Office Box 1668
Columbia, South Carolina 29202
T: 843-259-2925
mmcphail@aclusc.org
achaney@aclusc.org

*Counsel for Appellant*